## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EMR (USA HOLDINGS), LLC AND CAMDEN IRON & METAL, INC., | * <br> * <br> * |
| Plaintiffs, | * CIVIL ACTION NO. <br> * |
| VS. | * JUDGE <br> * |
| ATLANTIC SPECIALTY INSURANCE COMPANY AND MARKEL AMERICAN INSURANCE COMPANY, | * MAGISTRATE <br> * <br> * <br> * |
| Defendants. | * |

### COMPLAINT

The Complaint of EMR (USA Holdings), LLC and Camden Iron & Metal, Inc. alleges on information and belief:

1.

This is a claim under a policy of marine insurance and for declaratory judgment, and the Court has jurisdiction pursuant to 28 USC § 1333 and 28 USC § 2201-2202.

2.

Venue is proper in this district because the defendants are admitted and/or approved surplus lines insurers in the state of Louisiana, because the policy was issued by the defendant's agent in this district, and because the policy was delivered to plaintiffs in this district.

3.

Plaintiff Camden Iron & Metal, Inc. (hereinafter "Camden"), is a corporation domiciled in New Jersey and at all relevant times the charterer and owner *pro hoc vice* of the barge *CMT Y NOT 6*.

1

4.

Plaintiff EMR (USA Holdings), LLC (hereinafter "EMR") is a corporation domiciled in Delaware and was the parent corporation of Camden.

5.

Defendants Atlantic Specialty Insurance Company and Markel American Insurance Company (hereinafter collectively "P&I Underwriters") are insurers admitted in the State of Louisiana that subscribed to a portion of policy No. GCP 21530C (Atlantic Specialty Insurance Company 9.25% and Markel American Insurance Company 24.5%) (hereinafter "P&I Policy"), effective July 1, 2021- July 1, 2022, issued by their agent Gulf Coast Marine, LLC (hereinafter "Gulf Coast") to EMR and its subsidiaries, including Camden, at their address in Metairie, Louisiana.

INSURANCE POLICY

6.

The P&I Policy's Removal of Wreck provision provides that it will pay to the insureds the amount they have become liable to pay and shall pay on account of:

> Cost or expense of, or incidental to, any attempted or actual removal or disposal of obstructions, wrecks or their cargoes under statutory power or otherwise pursuant to law, PROVIDED, however that there shall be deducted from such claims the cost or expenses the value of any salvage from the wreck inuring to the benefit of the Assured or any subrogee thereof.

The P&I Policy's manuscript Sue and Labor provision states that it applies to vessels owned by the insureds or under contact to scrap whilst undertow or otherwise. It provides for the recovery of expenses, including when they are reasonably incurred but are in excess of the values recovered:

> And in the case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants, and Assigns to sue, labor, and travel for, in and about the defense, safeguard, and

2

recovery of the Vessel, or any part thereof, without prejudice to this insurance, the charges whereof the Underwriters will contribute their proportion as provided below. …

In the event of expenditure under the Sue and Labor clause, Underwriters shall pay the proportion of such expenses that the amount insured hereunder (less loss and/or damage payable under this Policy) bears to the actual value of the salved property, whichever proportion shall be less; … .

If a claim for Total Loss is admitted under this Policy *and sue and labor expenses have been reasonably incurred in excess of any proceeds realized or value recovered*, the amount payable under this Policy shall be the proportion of such excess that the amount insured hereunder (without deduction for loss or damage) bears to the Agreed Value or the sound value of the Vessel at the time of the accident, whichever value was greater; … *The foregoing shall also apply to expenses reasonably incurred in salving or attempting to salve the Vessel or other property to the extent that such expenses shall be regarded as having been incurred in respect of the Vessel.* (Emphasis added.)

7.

The provision that excludes claims that would be covered by the American Institute Time (Hulls) form of policy was deleted from the P&I Policy issued to EMR and Camden.

8.

The P&I policy was endorsed to add the *CMT Y NOT 6* as an insured vessel.  The agreed valuation and sum insured for the *CMT Y NOT 6* is US$1,000,000.

9.

By law, the P&I Underwriters may be served by serving a copy of this suit on the Louisiana Secretary of State.

3

FACTUAL ALLEGATIONS

10.

The *CMT Y NOT 6* was bareboat chartered to Camden. On May 22, 2022, the *CMT Y NOT 6* was in tow of the tug *Daisey Mae* and carrying approximately 6,432 tons of scrap.

11.

The crew of the *Daisey Mae* noticed a red glow in the cargo on the barge. Camden hired Resolve Salvage & Fire (Americas), Inc. and others to fight the fire.

12.

Eventually, the fire was extinguished, and the *CMT Y NOT 6* was allowed to return to Camden where the remaining scrap and fire-fighting water was removed. The *CMT Y NOT 6* then was towed to the GMD Brooklyn Navy Yard, where she was declared a constructive total loss.

13.

On May 23, 2033, and June 2, 2022, notice of the fire on the *CMT Y NOT 6* was given to P&I Underwriters by email to their agent Gulf Coast.

14.

On September 29, 2025, Simon Knowles, a qualified average adjuster, prepared an Adjustment of EMR's and Camden's claim for the expenses incurred in fighting the fire on the *CMT Y NOT 6*. Because the expenses were in excess of the values recovered, the Adjustment stated the loss as a claim for unrecovered General Average. The Adjustment found that

> "Had the Charterers failed to take the appropriate steps including the engagement of professional salvors, [there] is little doubt that the [Coast Guard and state authorities] would have taken matters into their own hands, likely federalizing the casualty."

and

> "The primary beneficiaries of the safe recovery of the barge were P&I/Excess Liability Underwriters who, having averted a probable

4

actual total loss, avoided the ensuing costs of [complying] with the inevitable wreck removal orders. Under the circumstances we believe that equity demands that these policies should bear the balance of General Average costs not recoverable from other insurances owing to the diminution of contributory values."

15.

The Adjustment was submitted to P&I Underwriters and stated a claim against P&I Underwriters' for their proportions of the first $950,000 of the loss.

16.

On March 30, 2026, counsel for P&I Underwriters responded denying the claim of EMR and Camden.

COUNT 1

DECLARATORY JUDGMENT

17.

EMR and Camden reallege and incorporate the preceding paragraphs as if fully set forth.

18.

An actual justiciable controversy exists between EMR and Camden, and P&I Underwriters that requires the intervention of this Court to determine the rights and obligations of the parties.

19.

The unrecovered General Average expenses incurred by EMR and Camden as stated in the Adjustment are covered under the Sue and Labor provision of the P&I Policy covering expenses "reasonably incurred in the salving or attempting to salve the [*CMT Y NOT 6*] or other property to the extent such expenses shall be regarded as having been incurred in respect of the [*CMT Y NOT 6*]."

20.

EMR and Camden seek a judicial declaration that their expenses in fighting the fire on the *CMT Y NOT 6* are covered pursuant to the Sue and Labor provision of the P&I Policy and that they are entitled to recover from P&I Underwriters their proportions of those expenses.

21.

In addition, the expenses incurred by EMR and Camden as stated in the Adjustment are covered under the Removal of Wreck provision of the P&I Policy because the expenses were "incidental" to the removal of a wreck because they avoided the burning *CMT Y NOT 6* sinking and becoming a wreck in navigable waters.

22.

Although the expenses avoiding the burning *CMT Y NOT 6* becoming a wreck would be covered as sue an labor under the American Institute Time (Hulls) form of policy, they are not excluded under the P&I Policy because the exclusion for claims that would be covered under the hull policy was deleted from the P&I policy issued to EMR and Camden.

23.

EMR and Camden seek a judicial declaration that their expenses in fighting the fire on the *CMT Y NOT 6* are also covered pursuant to Removal of Wreck provision of the P&I Policy and that they are entitled to recover from P&I Underwriters their proportions of those expenses.

COUNT 2
BREACH OF CONTRACT

24.

EMR and Camden reallege and incorporate the preceding paragraphs as if fully set forth.

25.

P&I Underwriters are contractually obligated to pay their proportions of the sums that EMR and Camden have become liable to pay and have paid as Sue and Labor expenses to avoid or diminish P&I Underwriters' potential liability for costs of removal of the *CMT Y NOT 6* had the vessel continued to burn and become a wreck in navigable waters that required removal.

26.

P&I Underwriters are contractually obligated to pay their proportions of the sums that EMR and Camden have become liable to pay and have paid as expenses "incidental to" to Removal of Wreck to avoid the burning *CMT Y NOT 6* sinking in navigable waters and becoming a wreck that required removal.

27.

EMR and Camden have made demand for payment from P&I Underwriters of their proportions of the first $950,000 of the loss, and they have denied coverage.

28.

In the circumstances, EMR and Camden are entitled to judgment against P&I Underwriters for their proportions of the first $950,000 of the loss, together with all related expenses, interest, and attorneys' fees and costs.

WHEREFORE, plaintiffs EMR (USA Holdings), LLC and Camden Iron and Metal, Inc. pray that, after due proceedings, this Court

1.    Enter judgment in their favor and against Atlantic Specialty Insurance Company and Markel American Insurance Company

A.    Declaring that their expenses in fighting the fire on the *CMT Y NOT 6* are covered pursuant to the Sue and Labor provision of the P&I Policy; and

7

B.    Declaring that their expenses in fighting the fire on the *CMT Y NOT 6* are covered pursuant to Removal of Wreck provision of the P&I Policy.

2.    Enter judgement in their favor and against Atlantic Specialty Insurance Company and Markel American Insurance Company for their proportions of the first $950,000 of the loss, together with all related expenses, interest, and attorneys' fees and costs.

3.    Grant all such other and further relief to which they may be entitled, or this Court deem just and equitable.

Respectfully Submitted,

JEFFERSON R. TILLERY (#17831)
EDWARD F. LEBRETON, III (#8215)
Jones Walker LLP
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:    (504) 582-8238
Facsimile:    (504) 589-8238
jtillery@joneswalker.com
elebreton@joneswalker.com

**PLEASE SERVE:**

Atlantic Specialty Insurance Company
Through the Louisiana Secretary of State

Markel American Insurance Company
Through the Louisiana Secretary of State

8